NOT DESIGNATED FOR PUBLICATION

No. 123,640

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of C.H., C.H., C.H.
and C.W.,
Minor Children.

MEMORANDUM OPINION

Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Opinion filed October 22, 2021.
Affirmed.

*Richard P. Klein*, of Olathe, for appellant natural mother.

*Elizabeth A. Billinger*, assistant district attorney, and *Stephen M. Howe*, district attorney, for
appellee.

Before ATCHESON, P.J., BRUNS and ISHERWOOD, JJ.

PER CURIAM: B.H. (Mother) appeals the termination of her parental rights related
to C.H. (Y.O.B. 2009); C.H. (Y.O.B. 2013); C.H. (Y.O.B. 2014); and C.W. (Y.O.B.
2016). Mother contends that clear and convincing evidence does not support the district
court's conclusions that she was presently unfit to care for her children; that her present
unfitness was unlikely to change in the foreseeable future; and that the termination of her
parental rights was in the best interests of the children. Having reviewed the record and
the district court's conclusions, we find no error and therefore affirm.

1

B.H. (Mother) is the mother of four children, C.H. (Y.O.B. 2009), C.H. (Y.O.B. 2013), C.H. (Y.O.B. 2014); and C.W. (Y.O.B. 2016), all of whom are the subject of this appeal. Each of the four children have a different father, none of whom join Mother in this appeal. That said, the father of C.H. (Y.O.B. 2014) filed a separate appeal regarding the termination of his parental rights.

On February 26, 2018, Monica Munden, a child protection specialist at the Kansas Department for Children and Families (DCF) received an assignment to investigate concerns regarding Mother's children. The assignment initially manifested in response to allegations of medical neglect. But soon after, Munden was asked to investigate additional allegations, including: lack of supervision, drug use in the home, and suicidal and homicidal statements made by Mother.

In the months that followed, Munden had contact with Mother numerous times. Occasionally however, she needed to rely on the help of the Olathe Police Department to help facilitate that contact. The initial interaction DCF had with Mother was through a worker other than Munden. When that individual requested that Mother take a drug test, Mother refused to do so. When Munden followed up a few weeks later, Mother submitted a test that yielded a negative result. Munder offered Mother the option of family preservation services, but Mother declined. Meanwhile, on May 2, 2018, the State filed a truancy petition involving C.H. (Y.O.B. 2009).

On May 24, 2018, one of Mother's neighbors contacted the Olathe Police Department after finding three of Mother's children, ages two through five, wandering alone for about 45 minutes without adult supervision. Detective Rickey Krefft responded to the call and noticed that the children smelled like urine and appeared to not have bathed in several days. He also observed injuries to two of the children, including a scab

on one of the children's faces and a large bruise on the hip of the other. After talking with the neighbors for nearly 45 minutes, without a sign that Mother was looking for her children, Detective Krefft tried to contact Mother at her home.

When Detective Krefft knocked on Mother's door, several adults answered, but it took Mother several minutes to come to the door. Detective Krefft also observed between four to six large dogs in the house. Mother told the Detective that she had been sleeping in the basement and was unaware her children had left the house. When confronted about leaving the children unsupervised, Mother denied that it had ever happened before. But Detective Krefft showed Mother pictures that her neighbor had shared with him of other occasions when the children had played outside unsupervised.

Detective Krefft also asked Mother about the injuries to the children, which she explained resulted from one child falling and the other being knocked over by one of Mother's dogs. He concluded that Mother's explanation about the second child was of questionable credibility given that it conflicted with the child's report that her younger brother bit her. Mother gave the detective permission to enter and take pictures of her home. Once inside, he observed that each of the children had a mattress to sleep on, but he likewise noticed cockroaches, an empty refrigerator, several large dogs, and a strong smell of urine in the bedrooms.

Based on the conditions of the children, his conversation with Mother, and his observations of the home, Detective Krefft decided to place the children in police protective custody. Less than a week later, on May 29, 2018, the State filed petitions alleging that Mother's youngest children were children in need of care pursuant to K.S.A. 2017 Supp. 38-2202(d)(1); (d)(2); (d)(3); and (d)(11), and that her oldest child was a child in need of care under K.S.A. 2017 Supp. 38-2202(d)(1); (d)(2); (d)(3); and (d)(6). That same day, the district court ordered the placement of all four children in temporary DCF custody based on the lack of supervision and the children's condition at the time that

3

they entered protective custody. A month later, on June 21, 2018, a case plan was established.

On August 20, 2018, Mother entered a no contest statement that the children were in need of care under K.S.A. 2018 Supp. 38-2202(d)(2). The district court conducted a hearing on the State's CINC petitions and, noting Mother's no contest statement, it adjudicated all four children to be Children in Need of Care pursuant to K.S.A. 2018 Supp. 38-2202(d)(1); (d)(2); (d)(3); and (d)(4).

At the same hearing, the district court addressed the establishment of a reintegration plan for Mother. In that regard, the State voiced concerns about the relatively short duration of the reintegration plan, suggesting that Mother had only recently begun a parenting class, had not progressed past supervised visits with her children, and was currently living with a registered sex offender. The State also noted that Mother had recently tested positive for methamphetamines. As a result of the State's concerns, the district court ordered a four-month reintegration plan, which included the directive that Mother begin regular drug testing immediately. The plan also required Mother to maintain proper and suitable housing, including providing documentation that no one in the home had a criminal history or was using illegal substances; secure stable income sufficient to meet the needs of her children; attend parenting classes; abstain from drug and alcohol use, complete a mental health and medication evaluation, and follow all recommendations; and attend supervised visitation with her children. The judge advised Mother there was potential to allow her more time to complete the reintegration tasks provided she exhibited progress with the plan.

Nine months later, the State moved for termination of Mother's parental rights. The district court later conducted a two-day bench trial on the State's motion. At the time of trial the children were 10 years old, 6 years old, 5 years old, and 3 years old and had

4

been in DCF custody for about 21 months. During the trial, the State called seven witnesses. Mother opted not to testify and did not present other evidence.

The State's witnesses included Monica Munden and Detective Krefft, both of whom testified about the circumstances that initially led to the children's initial placement in DCF custody. The State then called additional witnesses assigned to assist Mother with the completion of her reintegration plan.

Jessica Robinson, a KVC Health Systems (KVC) substance abuse counselor, testified to efforts designed to assist Mother with her case plan tasks. She informed the court that despite being assigned to work with Mother in June 2018, Mother did not meet with Robinson for the first time until October 23, 2018. At that time, Robinson recommended that Mother participate in outpatient drug treatment and random drug testing. Rather than commit herself to those measures, however, Mother often rescheduled, cancelled, or failed to honor her treatment related appointments, which eventually caused her "unsuccessful" discharge from drug treatment. Finally, Robinson testified that Mother rebuffed the agency's referrals for additional services.

Next, Stephanie Meyers, a KVC case manager, testified about her work with Mother which originated when the children went into DCF custody and extended roughly eight months. Meyers testified that Mother maintained consistent contact with her and attended scheduled visitations with the children, however, Mother also resided with a registered sex offender at that time. Meyers also informed the court that Mother never provided proof of housing, income, or transportation, and similarly failed to provide documentation for a mental health assessment, a medication evaluation, or completion of a parenting class. Finally, Meyers testified that Mother did not follow the recommendations of her substance abuse evaluation. She missed several drug tests and, when she did make testing a priority, frequently tested positive for marijuana and methamphetamine. In Meyers' opinion Mother failed to successfully complete a

significant portion of her reintegration plan, and Meyers would not advocate for an extension of time given Mother's lack of progress in the time already allotted.

Krystal Bledsoe, Mother's second KVC case manager, also testified and corroborated Meyers' assertions that Mother failed to provide income and housing documentation and neglected to complete a parenting class, outpatient mental health treatment, or outpatient substance abuse treatment. Like Meyers' experience, during Bledsoe's assignment to the case, Mother missed scheduled drug tests and continued to test positive for marijuana and methamphetamine. Bledsoe explained to the court that she initially allowed visitation to occur at Mother's house but, ultimately, had to return visits to locations in the community due to a cockroach infestation in Mother's home.

Courteney Colvin, a permanency supervisor with KVC, testified that Mother was unlikely to complete her case plan if given additional time and that the children had permanency options available to them through maternal relatives.

At the close of evidence, the district court took the matter under advisement then ultimately issued a memorandum decision that terminated Mother's parental rights to all four children. In support of its conclusion the court noted it found Mother unfit pursuant to: K.S.A. 2019 Supp. 38-2269(b)(7) based on the failure of reasonable efforts made to rehabilitate the family; K.S.A. 38-2269(b)(8) based on Mother's failure to adjust her circumstances, conduct, and conditions to meet the needs of her children; and K.S.A. 2019 Supp. 38-2269(c)(3) based on Mother's failure to complete her reintegration plan.

The district court articulated findings relevant to each factor. As to K.S.A. 2019 Supp. 38-2269(b)(7), the court found both public and private agencies undertook numerous and reasonable measures to reintegrate Mother with all four of her children. Unfortunately, those efforts failed. The court noted that case workers were consistently available to Mother, contacted her and made referrals for her to assist her with trying to

complete her case plan and reintegration plan tasks. KVC ensured the children's physical and mental health issues were addressed and managed the logistics of getting them to visit and providing supervision for those visits. Finally, the court highlighted that KVC prepared a detailed reintegration plan and provided her with a corresponding case plan to assist with completion of her tasks.

The court next addressed K.S.A. 2019 Supp. 38-2269(b)(8) and determined that Mother failed to adjust her circumstances, conduct, or conditions to meet the needs of children. Of specific concern to the court was the reality that Mother essentially completed no task assigned to her. She did not provide adequate proof of housing, income, or employment, refused to submit to regular drug testing, and when she did participate, she often tested positive for marijuana and methamphetamine. The court also observed that Mother did not complete drug and alcohol evaluations or treatment, nor did she follow through with mental health treatment recommendations.

Corresponding with that factor was K.S.A. 2019 Supp. 38-2269(c)(3). The court noted that mother was granted a very generous time frame in which to prove actions versus mere intentions. Despite that latitude, Mother failed to complete the court ordered tasks that would enable her to move a few steps closer to making reintegration with her children a reality.

Following the fleshing out of those factors, the court moved on to the next phase of the analysis and determined that Mother's unfitness was unlikely to change in the foreseeable future. Thus, it was in the best interest of the children that her rights be terminated. Numerous aspects of the case provided the requisite foundation for its conclusion. The court observed that the case was just shy of two-years old and not only had Mother failed to complete the tasks in her case and reintegration plans but further, and perhaps more disconcerting, was the fact that Mother never adequately addressed the issues which prompted this case. The court was keenly aware that Mother loved her

7

children, but properly concluded that the emotional bond was not enough in isolation. Again, it was a matter of actions versus intentions and Mother's actions fell far short of what the children's best interests required. Mother had twenty-one months to adjust her circumstances and declined to do so. Finding that the past often offers a lens to the future, the court determined it was unlikely Mother would make the changes necessary to adequately meet the physical, mental, and emotional needs of the children and it was time they received the hope of permanency.

Mother timely appealed and brings this matter before us.

LEGAL ANALYSIS

A parent has a constitutionally recognized right to a continuing relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Stanosky*, 455 U.S. at 758-59). The right entails a fundamental liberty interest shielded in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (fundamental liberty interest); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control"). Thus, the State may terminate a parent's right to raise a minor child only upon clear and convincing proof of parental unfitness. K.S.A. 2020 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

After a child has been adjudicated in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future."

8

K.S.A. 2020 Supp. 38-2269(a). The statute contains a nonexclusive list of nine conditions that would sustain a finding of unfitness. K.S.A. 2020 Supp. 38-2269(b). The statute also lists four other conditions to consider when the child is no longer in the physical custody of a parent. K.S.A. 2020 Supp. 38-2269(c). Any one of the factors in K.S.A. 2020 Supp. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2020 Supp. 38-2269(f).

In assessing the unlikelihood of change in the foreseeable future under K.S.A. 2020 Supp. 38-2269(a), we gauge the permissible duration using "child time" as the appropriate measure. As the governing statutes recognize, children experience the passage of time in distinctly different ways than adults. For children, a month, or a year seems far longer, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 2020 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

Further, upon arriving at the conclusion of unfitness, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2020 Supp. 38-2269(g)(1). In making such a decision, the court must give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2020 Supp. 38-2269(g)(1).

On appeal, Mother contends that the State failed to present clear and convincing evidence that she was presently unfit to care for her children; that her present unfitness was unlikely to change in the foreseeable future; or that the best interests of the children required termination of her parental rights.

9

When there is a challenge to the sufficiency of the evidence supporting a district court's decision to terminate parental rights, an appellate court will uphold the findings of unfitness and the unlikelihood of change if, after reviewing the evidence in a light most favorable to the prevailing party, they are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational factfinder could have found it highly probable that the circumstances justify a finding of parental unfitness and the unlikelihood of change as components of the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705; *In re K.H.*, 56 Kan. App. 2d 1135, 1139, 444 P.3d 354 (2019). In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

*Present Unfitness*

Mother first argues that the district court's conclusion regarding her present unfitness is not supported by clear and convincing evidence. Of specific concern to her is the district court's conclusion that she was presently unfit because reasonable efforts made by public and private agencies to try and reintegrate Mother with her children did not succeed, under K.S.A. 2020 Supp. 38-2269(b)(7); that she failed to adjust her circumstances, conduct, or conditions to meet the needs of her children, pursuant to K.S.A. 2020 Supp. 38-2269(b)(8); and that she failed to complete tasks on her reintegration plan, pursuant to K.S.A. 2020 Supp. 38-2269(c)(3).

Our comprehensive review of the record leads us to the conclusion that the district court's findings are supported by clear and convincing evidence. As previously noted, the court articulated solid, factual findings for each factor relied on.

First, the evidence does support a finding that an abundance of reasonable efforts was undertaken by public and private agencies to try to reintegrate Mother with all four of her children, but those efforts proved unsuccessful. See K.S.A. 2020 Supp. 38-2269(b)(7). KVC provided services to the family from the inception of the case. The workers assigned to the family were available to Mother throughout the proceedings and put forth a concerted effort to help her fulfil the requirements outlined in her case and reintegration plans. Moreover, they endeavored to ensure the needs of the children were satisfied. Unfortunately, the efforts of the agency exceeded those that Mother put forth.

Further, we are similarly satisfied that the record contains clear and convincing evidence to support the district court's conclusion that Mother failed to adjust her circumstances or conduct to meet the needs of the children, and that she failed to complete or provide proof of completion of the tasks in her reintegration plan. See K.S.A. 2020 Supp. 38-2269(b)(8); K.S.A. 2020 Supp. 38-2269(c)(3).

When considering the district court's conclusion regarding present unfitness, we must view the evidence presented in a light favoring the State, as the party prevailing in the district court. *In re B.D.-Y.*, 286 Kan. at 705; *In re K.H.*, 56 Kan. App. 2d at 1139.

At trial, the State presented the testimony of three KVC case managers who consistently assisted Mother throughout the nearly two years that the children were in DCF custody. Those individuals testified that Mother regularly attended scheduled visitations with her children. Even so, they also uniformly testified that Mother otherwise failed to complete her assigned tasks under either the case plan or the reintegration plan.

For instance, the court heard evidence through the case managers that Mother failed to provide proof of income, or transportation and, rather than safe, stable housing, was living with a registered sex offender for most of the time during the case and reintegration plans. Moreover, she neglected to complete a required mental health

11

assessment, as well as outpatient mental health care and failed to provide documentation evidencing completion of a medication evaluation and parenting classes as directed.

In addition, and perhaps more troubling, Mother likewise failed to complete a substance abuse treatment program. According to the case managers, Mother instead opted to repeatedly skip scheduled drug tests and those she did submit to routinely yielded positive results for methamphetamine and marijuana. This testimony was corroborated by that of Mother's assigned KVC substance abuse counselor who informed the court that Mother continually avoided the counselor's attempts to schedule meetings, and that Mother was "unsuccessfully" discharged from drug treatment services as a result. The collective opinion of the KVC specialists was that given her persistent lack of progress, Mother was unlikely to complete her assigned tasks if given more time.

Despite this substantial framework, Mother argues that the district court's conclusion regarding present unfitness lacked the requisite evidentiary foundation. As support for her contention, Mother contends that KVC did not accommodate the varied mental health struggles she endures and only allotted her four months to complete the tasks in her reintegration plan yet neglected to provide any meaningful assistance toward reintegration during that time, leaving her with a sense of hopelessness. Mother also contends that while Meyers informed the court that she believed that Mother did not deserve an extension of her reintegration plan, Meyers was also often unavailable when Mother reached out to her for assistance during the time that Meyers oversaw her case. Accordingly, from her perspective, KVC did not engage in reasonable reintegration efforts.

The record before us does not support Mother's assertions. First, as it relates to her allegation that KVC failed to accommodate her mental health issues, the record reveals that was not the case. Rather, the documentation available to us reflects that Mother repeatedly refused to actively participate in mental health treatment programs as

recommended by KVC. Additionally, as for her claims that KVC neglected to provide support or to help her accomplish the goal of reintegration, at least four KVC employees testified that over the course of the 21 months that the children were in DCF custody, Mother did not actively work with KVC on her assigned tasks. Her KVC substance abuse counselor similarly testified that Mother was often non-responsive to their attempts to schedule appointments or obtain necessary documentation relevant to her reintegration plan. The allegation that KVC was indifferent to her struggles with mental health is likewise not supported by the record. To the contrary, the evidence establishes that Mother repeatedly refused to participate in recommended mental health treatment programs despite persistent prodding by her KVC case workers.

In addition, Mother's characterization of Meyer's trial testimony about the extension of her reintegration plan appears to be largely taken out of context. Upon closer inspection, Meyer's professional opinion that she did not believe that Mother deserved an extension of time was made after Meyers had invested nine months in what was ultimately an unsuccessful endeavor to help Mother complete her assignments. There is no evidence that Meyer's opinion led to a lack of effort by either Meyers or by Mother's subsequent KVC case workers when it came to assisting Mother with her assigned tasks.

Finally, Mother's contention that KVC had unreasonable expectations when it assigned a four-month deadline to her reintegration plan turns a blind eye to the fact that the court previously afforded her six months to complete her case plan tasks and she was similarly unsuccessful. We note that when the district court ordered the four-month integration plan it sought to encourage Mother through an assurance that more time was a possibility if she exhibited progress on the required tasks. The unanimous testimony reflects that despite this incentive, Mother made no progress toward her assigned tasks under the reintegration plan.

In sum, considering the record facts in a light most favorable to the State, we find that the district court's conclusion about Mother's present unfitness is supported by clear and convincing evidence.

*Future Unfitness*

Second, Mother contends that the district court's conclusion that her present unfitness was unlikely to change in the foreseeable future is not supported by clear and convincing evidence. The district court made the following findings of fact and conclusions of law with respect to this issue:

> "[Mother] had twenty-one months to work on the tasks which were given to [her] to try to reintegrate with [her] children. While the Court does recognize and appreciate the bond that [Mother] has with her children, that is not enough. Her conditions of unfitness outweigh that bond, and she has not only failed to complete the tasks on her case plan and her reintegration plan, the issues that brought the children to the attention of the Court have not been adequately addressed and the numerous efforts made by KVC to try to assist her proved unsuccessful. [Mother] simply never adjusted her circumstances or her conduct or her conditions to meet the needs of her children. The Court has little confidence that any additional time will help her, and that instead the children will just continue to wait for permanency. . . . The past is a predictor of the future. The Court hereby finds and concludes that [Mother's] conditions of unfitness are unlikely to change in the immediate or foreseeable future."

Mother contends that the district court's decision regarding her future unfitness "ignores the clear progress she made in the case" which she asserts reflected that she "was well on her way to completing the [reintegration] plan at the time of trial." In support, Mother notes that she was taking a parenting class, had cleaned up her home enough to host home visits for two months, and had not missed any scheduled visitations with her children. In addition, Mother asserts that she demonstrated the ability to "stay clean from drugs," citing negative drug tests for months in 2019 and one month in 2020.

Even so, while we note that Mother did participate in scheduled visitations, the record does not support Mother's contention that she had also made significant progress on her other assigned tasks. For instance, despite Mother's assertion, the record shows that Mother failed to provide documentation to establish that she was, in fact, taking a parenting class, and two of her case managers testified that Mother had not taken the recommended parenting classes. Further, although it is true that Mother had obtained the right to have visitations in the home, that privilege was short-lived because of Mother's failure to address a cockroach infestation. Her visits with the children abruptly shifted back to the community as a result. Finally, Mother's contention that she had achieved some measure of sobriety ignores the overwhelming testimony that she actively avoided participation in substance abuse treatment and was ultimately unsuccessfully discharged from the program. Specifically, she neglected to attend scheduled appointments with her substance abuse counselor and routinely avoided drug tests. On those occasions when she did submit one, they were regularly positive for methamphetamines and marijuana.

The overwhelming evidence documented in the record demonstrates that Mother was not making progress on her reintegration plan at the time of her trial. The best indicator of future performance is past performance. Accordingly, courts can consider a parent's past conduct as evidence regarding the reasonable likelihood of any future change in parental fitness. See *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 944 (2019); *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). As a result, we find that the district court's conclusion regarding Mother's future unfitness is also supported by clear and convincing evidence.

*Termination of Parental Rights in Children's Best Interest*

Finally, Mother contends that the district court abused its discretion in finding that the termination of her parental rights was in the best interests of the children. In this regard, the district court made the following factual findings and conclusions of law:

15

"The children have waited almost two years to achieve permanency. They have numerous needs that need to be met. The Court does not have the confidence it needs that [Mother] can meet the physical, mental[,] or emotional needs of [her] children now or in the foreseeable future. These children deserve to have permanency in their lives, and they do not deserve to wait on their mother, . . . . The children all have permanency options available to them.

"The Court finds that it is in the best interest of the children for the parental rights of [Mother] . . . to be terminated. The Court hereby terminates [her] parental rights. The Court hereby grants the one and only consent for the adoption of these children to the Kansas Department for Children and Families."

In trying to counter the district court's conclusion, Mother asserts that she is bonded with her children, she loves them, and longs for reunification with them. She reiterates that her four-month reintegration plan was an insufficient time period for her to demonstrate her fitness to properly parent the children.

A child's best interests are assessed somewhat differently from unfitness or unlikelihood of change. As directed by K.S.A. 2020 Supp. 38-2269(g)(1), the district court shall give "primary consideration to the physical, mental[,] and emotional health of the child" in making a best interests determination. The assessment balances the negative effects of termination on the child with the benefits of "permanency" in a different home environment. Thus, a district court makes a best interests determination based on a preponderance of the evidence, not by clear and convincing evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. The ultimate decision essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1116. An appellate court reviews those sorts of conclusions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field*

16

*Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

In support of its decision, the district court recognized that, at the time of the trial, the children had already been in DCF custody for nearly two years and during that time, Mother had not successfully demonstrated that she could complete the tasks necessary to allow reintegration. As already discussed, we find that conclusion to be supported by clear and convincing evidence in the record. Further, the district court properly considered that nearly two-year span from the perspective of a child and concluded that further delaying the opportunity for permanency was not in in the children's best interests. See K.S.A. 2020 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d at 45; *In re G.A.Y.*, 2013 WL 5507639, at *1 ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

Notably, Mother does not challenge the district court's factual findings in this regard. Instead, she contends that, given more time, she could prove fitness. We do not doubt either Mother's love for her children nor her sincere interest in regaining custody of them. Still, without diminishing the sincerity of Mother's assertions, we note that the district court properly considered the time already afforded to Mother, as well as the unlikelihood that Mother would quickly change her circumstances, and reasonably concluded that more time was not in the best interest of the children. We find no error in that decision. See *In re K.L.B.*, 56 Kan. App. 2d 429, 447, 431 P.3d 883 (2018) ("A district court may look to a parent's past conduct as an indicator of future behavior.").

We readily acknowledge that the loss of parental rights is both tragic and sobering. That said, having scrutinized the record, we find that the district court did not abuse its discretion when it concluded that it was in the best interest of the children to terminate

Mother's rights and that such a measure was supported by a preponderance of the evidence. Finding no error, we, therefore, affirm.

Affirmed.